IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Brandon Lukens,<br><br>   Plaintiff,<br><br>v.<br><br>Bison, Inc., and Plax, Inc., d/b/a SMS Sportsworld,<br><br>   Defendants. | Case No.: 5:23-cv-03882-MGL<br>(Formerly Case No.: 2023-CP-38-00390) |

**PLAINTIFF'S MOTION TO REMAND AND MEMORANDUM IN SUPPORT**

PLEASE TAKE NOTICE that the Plaintiff, Brandon Lukens, through his undersigned counsel, moves for an Order remanding this action to the Orangeburg County Court of Common Pleas pursuant to 28 U.S.C. §§ 1446 and 1447. Bison removed this case based on its allegation that Plax, Inc., d/b/a SMS Sportsworld (hereinafter "SMS") is a "sham defendant," joined for the sole purpose of destroying diversity jurisdiction. Bison's removal was improper and objectively unreasonable because a cursory examination of South Carolina and federal statutes would reveal that (1) SMS is a viable defendant; and (2) Plaintiff can and will effectuate service upon SMS in accordance with South Carolina law.

**FACTS**

On or about December 8, 2022, at the Orangeburg First Baptist Church in Orangeburg County, South Carolina, Plaintiff was attempting to a lower a Bison BA803 Adjustable Basketball Goal System (hereinafter "subject basketball goal"). (Compl. – ECF # 1-1 ¶¶ 2, 8, and 13). The subject basketball goal's locking spring pin was stuck, and as Plaintiff attempted to remove the pin with one hand, while holding the basketball goal with the other, the basketball goal abruptly

1

released and landed on Plaintiff's right hand, severing his middle and ring fingers. (*Id.* at ¶ 13). The subject basketball goal was designed, manufactured, and distributed by Bison and was sold by SMS to the Orangeburg First Baptist Church. (*Id.* at ¶¶ 2 and 8; Bison's Ans. – ECF # 3 ¶ 8).

On July 5, 2023, Plaintiff commenced this product liability action in the Orangeburg Court of Common Pleas. (Compl. – ECF # 1-1). Plaintiff alleges three causes of actions against both Bison and SMS for negligence, strict liability, and breach of warranty for the design, manufacture, distribution, and sale of the subject basketball goal. (*Id.* at ¶ 24-26). Generally, Plaintiff alleges the subject basketball goal was in a defective and unreasonably dangerous condition at the time it was designed, manufactured, distributed, and sold by the Defendants, respectively, and such condition caused injury to Plaintiff. (*Id.* at ¶ 24-27).

Plaintiff is a citizen and resident of Orangeburg County, South Carolina. (*Id.* at ¶ 1). Bison is a Nebraska business. (Not. of Removal – ECF # 1 ¶ 2). SMS is a domestic corporation with its principal place of business in Orangeburg County, South Carolina. (Compl. – ECF # 1-1 ¶ 3). SMS is in good standing and maintains its charter with the South Carolina Secretary of State. (Exhibit 1 – SMS's Entity Profile). SMS's registered agent is Richard Sheridan, who passed away on July 6, 2023, (Not. of Removal – ECF # 1 ¶ 2), and SMS has not updated its registered agent with the Secretary of State. (Ex. 1 – SMS's Entity Profile). According to several news articles, SMS planned to close its Orangeburg store at the end of May 2023, if there was no buyer for the business, and Richard Sheridan's son, Robert "Bobby" Sheridan, is handling the store's closing.[1]

---

[1] Zalenski, *SMS closing after 41 years*, THE TIMES AND DEMOCRAT, SMS closing after 41 years (thetandd.com), (last visited September 5, 2023); Lee, *Legendary store and Nike rival set to close after more than 40 years as owner shares tragic reason behind shutdown*, The U.S. Sun, Legendary store and Nike rival set to close after more than 40 years as owner shares tragic reason behind shutdown | The US Sun (the-sun.com), (last visited September 5, 2023).

2

Robert Sheridan formerly operated an SMS Sportsworld store in North Augusta, South Carolina. (Exhibit 2 – Chamber of Commerce Listing) (listing Bobby Sheridan as a key contact). Robert Sheridan is the registered agent for Sheridan Sports, Inc. f/k/a SMS of North Augusta, Inc., a forfeited business incorporated in South Carolina. (Exhibit 3 – Sheridan Sports, Inc.'s Entity Profile). The registered agent's address for Sheridan Sports is 354 E Martintown Road, North Augusta, South Carolina, 29841. (*Id.*). Richard Sheridan also has another son, Jonathon "Jon" Sheridan.[2] Plaintiff is without sufficient information to state who inherited Richard Sheridan's interest in SMS.

Plaintiff served the Complaint upon Bison on July 19, 2023, via certified mail. (Not. of Removal – ECF # 1 ¶ 1). Plaintiff attempted to serve SMS via certified mail with a return receipt requested on July 13, 2023. (Exhibit 4 – Service Letter). However, on July 28, 2023, Plaintiff's counsel received correspondence from the United States Postal Service stating that delivery had not been made. (Exhibit 5 – USPS Correspondence). Bison removed this action ten (10) days later, before Plaintiff could properly serve SMS. (Not. of Removal – ECF # 1).

Bison claims removal is proper, although Plaintiff and SMS are both citizens of South Carolina. (*Id.* at ¶ 2). Bison claims SMS is a "sham defendant" joined solely to destroy complete diversity because SMS "ceased operation," and there is no person "upon whom service may be affected" subsequent to the death of Richard Sheridan, "the sole owner and officer" of SMS. (*Id.*; Bison's Amd. Int. – ECF # 10 ¶ H). Bison did not claim that Plaintiff included SMS in bad faith or outright fraudulently. (Not. of Removal – ECF # 1 and Bison's Ans. – ECF # 3).

---

[2] Richard Brinsley Sheridan, Posey Funeral Directors, Richard Brinsley Sheridan Obituary - Visitation & Funeral Information (poseyfuneraldirectors.com), (last visited September 5, 2023).

Bison's basis for removal is in contravention to the facts of this case, federal and South Carolina statutes, and well-established jurisprudence, as to render such objectively unreasonable and frivolous. Accordingly, Plaintiff moves the Court to remand this action to the Orangeburg County Court of Common Pleas.

## STANDARD

The removing party has the burden of demonstrating jurisdiction. *Montanaro v. State Farm Mut. Auto. Ins. Co.*, 29 F.Supp.3d 662, 665 (D.S.C. 2014) (citations omitted). "District courts are obligated to construe removal jurisdiction strictly because of the significant federalism concerns implicated." *Id.* (citations omitted) (internal quotations omitted). If there are any doubts regarding federal jurisdiction, remand to state court is required. *Id.* (citations omitted).

## ARGUMENT

Bison's removal of this case was improper because (1) this Court does not have original jurisdiction over this action because there is not complete diversity of citizenship between the parties; and (2) SMS is not a "sham defendant" because (a) SMS is a corporation that is capable of being sued, (b) Plaintiff can and will effectuate proper service upon SMS under South Carolina law, and (c) SMS sold the subject basketball goal and is subject to liability for Plaintiff's injuries caused by such.

I. **This Court does not have jurisdiction over this action because there is not complete diversity of citizenship between the parties.**

Remand is required because Plaintiff and SMS are both citizens of South Carolina. (Not. of Removal – ECF # 1 ¶ 2). "The district courts shall have original jurisdiction of all civil actions … between ***citizens of different states***." 28 U.S.C. § 1332(a) (emphasis added). For removal under 28 U.S.C. § 1441, corporations are "a citizen of every State … by which it has been incorporated

4

and of the State … where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Here, under the plain language of the diversity jurisdiction and removal statutes, this Court does not have original jurisdiction over this action because Plaintiff and SMS are both citizens of South Carolina. (*Id.*). Because there is not complete diversity between the parties, this action was not removable.

Contrary to Bison's implication in reliance on 28 U.S.C. § 1446(b)(2),[3] (Not. of Removal – ECF # 1 ¶ 2), lack of service upon SMS has no bearing on the removability of this case because Section 1441(a) only permits removal when this Court has ***original jurisdiction***. 28 U.S.C. § 1441(a); *See Pullman Co. v. Jenkins*, 305 U.S. 534, 540-41, 59 S.Ct. 347, 350 (1939) (holding "the fact that a resident defendant has not been served with process does not justify removal by the non-resident defendant"). Because this Court does not have original jurisdiction over this action, the fact that SMS has not yet been served does not justify this removal. This Court should, therefore, remand this action to state court. Further, SMS is not a "sham defendant," and Bison has no legally cognizable basis to claim such.

II.  **SMS is not a "Sham Defendant" because SMS can be sued, properly served, and held liable for the injuries caused by the subject basketball goal SMS sold.**

Bison recognizes that SMS is a citizen of South Carolina but claims that SMS is a "sham defendant" who was fraudulently joined solely to destroy diversity. (Not. of Removal – ECF # 1 ¶ 2). "To show fraudulent joinder, the removing party must demonstrate either outright fraud in the plaintiff's pleading of jurisdictional facts, or that there is ***no possibility*** that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (emphasis in original). Bison did not allege bad

---

[3] In pertinent part, 28 U.S.C. § 1446(b)(2), provides "when a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."

5

faith or outright fraud in joining SMS[4], (Not. of Removal – ECF # 1 ¶ 2; and Bison's Ans. – ECF # 3 ¶ 5), "thus the only inquiry is whether [Plaintiff] has any possibility of recovery." *Id.*

Where the defendant does not allege bad faith in the plaintiff's pleadings, "the burden on the defendant claiming fraudulent joinder is heavy: the defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant ***even after resolving all issues of fact and law in the plaintiff's favor***." *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993) (emphasis added). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Hartley*, 187 F.3d at 424; *Beaufort County School Dist. v. United Nat. Ins. Co.*, 519 F.Supp.2d 609, 614 (D.S.C. 2007) (describing the standard as "among the most liberal [of all pleading standards] in all of the law"). "A claim need not ultimately succeed to defeat removal; ***only a possibility of a right*** to relief need be asserted." *Marshall*, 6 F.3d at 233 (emphasis added). When a defendant claims fraudulent joinder, the court may look beyond the pleadings to determine if the joinder was fraudulent. *Auto Ins. Agency, Inc. v. Interstate Agency, Inc.*, 525 F.Supp. 1104, 1106 (D.S.C. 1981). Bison has not and cannot meet its heavy burden of demonstrating that Plaintiff ***has no possibility*** of establishing a cause of action against SMS in state court, such that Bison's basis for removal is objectively unreasonable.

**A. *SMS is not a "sham defendant" because SMS can be sued, regardless of whether SMS ceased business operations*.**

---

[4] It appears the only real difference in Plaintiff and Bison's jurisdictional pleadings is the use of the present tense when describing SMS's operations. (Compl. – ECF # 1-1 ¶ 3) (SMS "is engaged in the business … of selling"); *cf.* (Bison's Ans. – ECF # 3 ¶ 5) (SMS "was previously … engaged in the business … of selling"). Such distinction is immaterial because, regardless of whether SMS is or was engaged in the business, SMS *sold* the subject basketball goal. (Compl. – ECF # 1-1 ¶ 8; and Bison's Ans. – ECF # 3 ¶ 8).

SMS is incorporated in South Carolina, and SMS is in good standing and has maintained its corporate charter with the South Carolina Secretary of State. (Ex. 1 – SMS's Entity Profile). Bison erroneously places great weight on the alleged fact that SMS ceased its business operations in asserting its basis for removal. (Not. of Removal – ECF # 1 ¶ 2; and Bison's Ans. – ECF # 3 ¶ 5). South Carolina statutes and Fourth Circuit jurisprudence prove Bison wrong. As a corporation, SMS is subject to suit in South Carolina regardless of its business operations.

Under S.C. Code Ann. § 33-3-102, "unless its articles of incorporation provide otherwise, every corporation has ***perpetual duration and succession in its corporate name and has the same powers as an individual*** … [to] ***be sued*** … and defend in its corporate name." (emphasis added). Thus, under the plain language of South Carolina's corporate powers statute, SMS is a valid defendant because SMS can be sued just like any other individual, and SMS has perpetual duration and succession in its corporate name. The statute does not provide a caveat for a corporation not engaged in business operation. Consequently, SMS is a valid defendant, was not fraudulently joined, and Bison has no objectively reasonable basis for asserting such as grounds for removal.

Notwithstanding the clear language of South Carolina's general corporate powers statute, the Fourth Circuit recognizes that "a corporation's business does not usually end with the abruptness of closing its doors." *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 291-92 (4th Cir. 1999) (finding no issue with the plaintiff corporation commencing a lawsuit almost three years after ceasing operations and was in good standing and maintained its charter). Likewise, the "mere fact that a corporation is defunct does not mean it cannot be sued… ***Even after dissolution***, a corporation remains subject to legal proceedings in its corporate name." *Storr Off. Supply Div., a Div. of Storr Off. Env'ts, Inc. v. Radar Bus. Syst.-Raleigh, Inc.*, 832 F.Supp. 154, 157 (E.D.N.C. 1993) (emphasis added) (holding that the fact that the defendant corporation "ceased conducting

7

business in 1992 and formally dissolved in September 1993, after commencement of [the] suit, does not make it less of a necessary party to [the] proceeding"). *See* S.C. Code Ann. § 33-14-105(c)(2) ("Dissolution of a corporation does not prevent commencement of a proceeding by or against the corporation in its corporate name").

Here, even if SMS ceased operation prior to the commencement of this action that fact has no bearing on the validity of SMS as a defendant. This is especially true considering SMS is in good standing and has an active charter in South Carolina like the plaintiff in *DiGregorio* who commenced an action after ceasing operations. (Ex. 1 – SMS's Entity Profile). Further, ***even if SMS was dissolved***, SMS can still be sued just like in *Storr Off. Supply Div., a Div. of Storr Off. Env'ts, Inc.* The fact that a corporation can be sued even after dissolution is further proof of the frivolousness of Bison's claim that SMS's lack of business operations provides a basis for removal. Thus, SMS was properly included in this action and closing its business operations is irrelevant.

Likewise, whether SMS ceased operations or could not satisfy a judgment against it is irrelevant as to its validity as a defendant, which Bison seemingly implies as a basis for removal. (Not. of Removal – ECF # 1 ¶ 2). "A defendant is nominal if there is ***no arguably reasonable basis*** for predicting that state law might impose liability on the resident defendant under the facts alleged. ***There need only be a possibility that a right to relief exists to avoid that conclusion***." *Beaufort County School Dist.*, 519 F.Supp. at 615. (emphasis added) (citations omitted) (internal quotations omitted). *See Storr Off. Supply Div., a Div. of Storr Off. Env'ts, Inc.*, 832 F.Supp. at 156-57 (recognizing that "the plaintiff's intent to ***obtain*** a judgment, not its intent to ***collect*** upon the judgment, [is] controlling, without regard to whether the plaintiff's motive in joining a "poor" defendant was to destroy diversity") (emphasis in original). Further, "***a defendant's inability to satisfy a judgment bears no relation to the plaintiff's intent to obtain a judgment***." *Id.* at 157

(emphasis added). Regardless of SMS's ability or inability to satisfy any judgment in the outcome of this action, SMS is not a sham or nominal defendant. Any claim to the contrary, like the rest of Bison's basis for removal, is frivolous and objectively unreasonable. Therefore, this Court should remand this action.

### B. *SMS is not a "sham defendant" because SMS can be properly served*.

There is no reasonable or legally cognizable basis for Bison's claim that SMS cannot be served because South Carolina statutes plainly provide options to serve SMS, regardless of its business operations or the status of its registered agent. Bison claims SMS is a sham defendant because, in conjunction, SMS ceased operations and "ceased to exist beyond a legal fiction upon the death of its registered agent and sole remaining officer/owner/shareholder." (Bison's Ans. – ECF # 3 ¶ 5). As discussed above, whether SMS was at the height of its operations, ceased operations, or dissolved, this action can be properly brought against SMS in state court. Likewise, Richard Sheridan's death has no bearing on the validity of SMS as a defendant.

Bison is correct in that SMS does not exist "beyond a legal fiction." (*Id.*). Bison is incorrect, however, in asserting that such has any relevance to SMS's validity as a defendant. "A corporation is a fictional legal entity separate from its shareholders." *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d. 375, 385 (4th Cir. 2018) (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d. 681, 683 (4th Cir. 1976). "***A corporation is an entity, separate and distinct from its officers and stockholders, and [] its debts are not the individual indebtedness of its stockholders***." *Hunting v. Elders*, 359 S.C. 217, 223, 597 S.E.2d 803, 806 (Ct. App. 2004) (quoting *DeWitt Truck Brokers, Inc.*, 540 F.2d at 683) (emphasis added).

Typically, this basic principle of business law only arises in the context of piercing the corporate veil. Nonetheless, Bison claims that this principle stands for the proposition that SMS's

9

liabilities are extinguished upon Richard Sheridan's death. (Not. of Removal – ECF # 1 ¶ 2; and Bison's Ans. – ECF # 3 ¶ 5). Bison's proposition is in complete contradiction to the fundamental principle that a corporation is a separate entity from its shareholders and a corporation's liabilities are its own, as recognized in *Sky Cable, LLC*, *DeWitt Truck Brokers, Inc.*, and *Hunting*. Because SMS is a separate legal entity and SMS's liability for damages in this action is its own, Richard Sheridan's death has no effect on Plaintiff's right to hold SMS liable in this action.

The fact that SMS is its own legal entity also means that even when the sole shareholder of a corporation is deceased, the corporation, along with its associated liabilities, lives on and can be properly served. *See* S.C. Code Ann. § 33-3-102 (every corporation has "perpetual duration and succession in its corporate name"). SCRCP, Rule 4(d)(3) provides a corporation may be served by "delivering a copy of the summons and complaint to an officer, a ***managing or general agent***, or to any agent authorized by appointment to receive service of process." (emphasis added). SMS's non-compliance with S.C. Code Ann. § 33-5-101 (requiring a corporation to maintain a registered agent), while inconvenient, does not affect SMS's ability to be served, and there are at least three avenues whereby SMS can be properly served: (1) through Robert (and likely Jonathon) Sheridan; (2) as prescribed in S.C. Code Ann. § 15-9-210(c); or (3) by publication.

First, when viewed in light of the principal objective of service, Robert Sheridan can accept service. "The principal objective of service of process is to give notice to the defendant corporation of the proceedings against it." *Mull v. Ridgeland Realty, LLC*, 387 S.C. 479, 485, 693 S.E.2d 27, 30 (Ct. App. 2010) (quoting *Burris Chemical, Inc. v. Daniel Const. Co.*, 251 S.C. 483, 487, 163 S.E.2d 618, 620 (1968)) (internal quotations omitted). "Exacting compliance with the rules is not required to [a]ffect service of process. Rather, the court must inquire whether the plaintiff has sufficiently complied with the rules such that the court has personal jurisdiction of the defendant

10

and the defendant has notice of the pleadings." *Id.* (citation omitted) (internal punction omitted) (internal quotations omitted).

SMS can be properly served by "delivering a copy of the summons and complaint to a managing agent." *Schenk v. National Health Care, Inc.*, 322 S.C. 316, 319, 471 S.E.2d 736, 737 (Ct. App. 1996) (quoting Rule 4(d)(3), SCRCP) (cleaned up). There, the defendant corporation's registered agent retired, and the corporation had not filed a change of registered agent with the secretary of state. *Id.* (recognizing that a plaintiff "should not be penalized for the [defendant's] failure to update its records with the Secretary of State"). The court held that the defendant corporation's office manager was authorized to accept service under SCRCP, Rule 4 as a managing agent. *Id.* at 320, 471 S.E.2d at 738.

Similarly, SMS can be properly served by delivering a copy of the summons and complaint to Robert "Bobby" Sheridan, as managing agent. Like the corporate defendant in *Schenk* whose registered agent retired without notification to the secretary of state, SMS does not have a proper registered agent, and Plaintiff should not be penalized for SMS's failure to update its records. Robert Sheridan can be properly served as SMS's managing agent because he is "winding up the business," i.e., handling the store's closeout. In other words, he is serving in a similar capacity as office manager in *Schenck* who was deemed a managing agent under SCRCP, Rule 4. Thus, as managing agent, Robert Sheridan can be properly served to affect service upon SMS.

Further, the principal objective of SCRCP, Rule 4 is met by SMS being served through Robert or Jonathon Sheridan. While unclear who inherited the interest in SMS from Richard Sheridan[5], there are no two people in a better position to (1) know who inherited such, and (2)

---

[5] Contrary to Bison's contention, the interest in SMS has not disappeared into thin air. The corporation, as a legal entity, lives beyond any shareholder, and Richard Sheridan's interest in

11

provide notice to whomever has such interest. This is especially true in the case of Robert Sheridan who is winding up the business, (*Id.*), and he formerly operated an SMS Sportworld store. (Ex. 4 – Chamber of Commerce Listing). As recognized in *Mull*, the only purpose of serving SMS in this case is to provide notice to SMS of this proceeding against it,[6] and no person is in a better position to do so than Robert Sheridan. Further, *Mull* specifically recognized that strict compliance with the rules is unnecessary so long as the principal objectives are served. Because delivering the summons and complaint to Robert (and likely Jonathon) Sheridan meets the principal objectives of SCRCP, Rule 4, service can be properly affected upon SMS and removal was inappropriate.

Even if service cannot be properly affected upon Robert or Jonathon Sheridan, the two other methods of service provide an avenue for properly serving any domestic corporation, further proving that Bison's basis for removal is unreasonable. First, S.C. Code Ann. § 15-9-210(c) provides a plaintiff an avenue properly affect service upon a domestic corporation that "**has no registered agent or the agent cannot be served with reasonable diligence by means authorized rule or statute**..." (emphasis added). After following the prescribed procedures, service is affected upon the corporation. *See* S.C. Code Ann. § 15-9-210(c). Second, Section § 15-9-730 provides another means for a plaintiff to serve a domestic corporation by publication when "**no officer or agent thereof upon whom service of process can be made can**, after due diligence, be found in this State…" S.C. Code Ann. § 15-9-730 (emphasis added); *see* S.C. Code Ann. § 15-9-740 (the procedure for publication). Under the plain language of the language of South Carolina statutes, a

---

SMS has gone to someone. S.C. Code Ann. § 33-3-102. Most likely, as his closest living relatives, his interest went to or is going to Robert or Jonathon Sheridan.
[6] The Orangeburg County Court of Common Pleas clearly has personal jurisdiction over SMS because SMS's principal place of business and its registered address is located in Orangeburg County.

domestic corporation can *always* have service affected upon it. Consequently, SMS can and will be properly served under the laws of South Carolina.

Prior to filing this motion, Plaintiff has sent the Summons and Complaint for service upon Robert Sheridan. Even if attempts at service on Robert Sheridan are unsuccessful, Plaintiff will utilize the other service of process options available to him. Thus, Bison's basis for removal is in direct contradiction to the plain language of South Carolina statutes. Therefore, this Court should remand this action.

    C. *SMS is not a "sham defendant" because SMS sold the subject basketball goal.*

Plaintiff alleged the same causes of action against Bison and SMS for the sale of the subject basketball goal. Bison cannot seriously contend that Plaintiff has no possibility of establishing a cause of action against SMS in state court on the merits. (Compl. – ECF # 1-1 ¶ 24-28). Like any other corporation who "sells any product in a defective condition unreasonably dangerous to the user or consumer," SMS is subject to strict liability for any physical harm caused to Plaintiff. *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 221, 781 S.E.2d 548, 554 (2015) (quoting S.C. Code Ann. § 15-73-10) (internal quotations omitted). Section 15-73-10 "imposes strict liability upon the **manufacturer and seller** of a product for an injury to any 'user or consumer' if the product reaches the user or consumer without substantial change in the condition in which it was sold." *Id.* (citations omitted) (emphasis added). Under the plain language of South Carolina's product liability statute, Plaintiff has fully established a cause of action against SMS and Bison because Bison manufactured, and SMS sold the subject basketball goal. (Compl. – ECF # 1-1 ¶ 8; and Bison's Ans. – ECF # 3 ¶ 8). Thus, Bison and SMS are both subject to liability for the physical harm it caused to the Plaintiff, and Plaintiff did not fraudulently join Bison.

In conclusion, SMS is not a sham defendant because SMS can be sued like any other corporation, regardless of whether its business operations have ceased. Service can be affected upon SMS under at least three different avenues, and SMS and Bison are both subject to liability for the injuries caused by the subject basketball goal. Bison's basis for removal was incorrect because its basis was in direct contradiction to the facts of this case, plain language of federal and South Carolina statutes, and well-established jurisprudence. Therefore, this Court should remand this action to the Orangeburg County, Court of Common Pleas.

WHEREFORE the Plaintiff requests that this Honorable Court remand this action to the Orangeburg County Court of Common Pleas.

WILLIAMS & WILLIAMS
David R. Williams
david@williamsattys.com
1281 Russell Street
P.O. Box 1084
Orangeburg, SC 29116

and

PARKER LAW GROUP, LLP

BY:     *s/Austin H. Crosby*
Austin H. Crosby
SC Bar No. 80161
acrosby@parkerlawgroupsc.com
Ronnie L. Crosby
SC Bar No.66481
rcrosby@parkerlawgroupsc.com
101 Mulberry Street East
P.O. Box 487
Hampton, SC 29924
(803) 903.1781

ATTORNEYS FOR PLAINTIFF

September 6, 2023
Hampton, South Carolina